IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

JOSEPH C. KELLY,

    Plaintiff,

v.

CHEESEMAN LLC, and
TERRY CARNAHAN,

    Defendants.

Case No. 3:22cv237

JURY DEMANDED

Varlan/Poplin

# COMPLAINT

COMES NOW Plaintiff, Joseph C. Kelly, by and through counsel, and for cause of action against the Defendants, Cheeseman LLC and Terry Carnahan, respectfully states as follows:

## PARTIES

1. Plaintiff, Joseph C. Kelly (hereinafter "Chris Kelly"), is domiciled in Church Point, Acadia Parish, Louisiana, and is a citizen of Louisiana for purposes of diversity jurisdiction. The Plaintiff, Chris Kelly, sustained certain personal injuries and damages as a direct result of an impact between two commercial tractor-trailer vehicles which occurred in Campbell County, Tennessee, on July 13, 2021.

2. Upon information and belief, the Defendant, Terry Carnahan, is domiciled in Laurinburg, Scotland County, North Carolina at 12880 Randomwood Drive, Laurinburg, North Carolina 28352. The Defendant is subject to service of process through the Secretary of State of Tennessee pursuant to Tenn. Code Ann. § 20-2-203, and is a citizen of North Carolina for purposes of diversity jurisdiction.

1

3. Upon information and belief, Defendant, Cheeseman LLC, is an Ohio limited liability company with its principal place of business or corporate headquarters located at 2200 SR-119, Fort Recovery, Ohio, 45846, and its Ohio registered agent for service is PS&E Corporate Services, Inc., 40 N. Main Street, 2700 Kettering Tower, Dayton, Ohio 45423-2700. Defendant, Cheeseman LLC, is subject to service of process through the Secretary of State of Tennessee pursuant to Tenn. Code Ann. §§ 20-2-201 through 20-2-226, specifically including, but not limited to, §§ 20-2-203, 20-2-205, 20-2-214, 20-2-215, 20-2-223 and 20-2-224 and is a citizen of Ohio for purposes of diversity jurisdiction. However, in this case, counsel for the Defendant, Cheeseman LLC, has agreed to accept service of process on behalf of Cheeseman LLC.

4. Defendant Cheeseman LLC (hereinafter "Cheeseman") is an interstate commercial carrier/trucking company engaged in the business of commercial transportation which, upon information and belief, operates locally, regionally, and nationally in the United States.

5. Upon information and belief, Defendant Cheeseman was the employer or principal of the Defendant, Terry Carnahan, at the time of the subject accident of July 13, 2021 described herein, who was acting in the course and scope of his employment or agency at the time of the said accident such that any liability of Defendant Terry Carnahan is imputed to Defendant Cheeseman by operation of law under principles of agency, and or *respondeat superior*, and or master-servant.

6. At all times relevant, Defendant Terry Carnahan was acting as an employee, servant, agent, or apparent agent of Defendant Cheeseman.

7. At all times relevant, Defendant Cheeseman was the owner of the 2017 International TT tractor-trailer that was being operated by Defendant Terry Carnahan in Campbell County, Tennessee at the time of the subject accident.

8. At all times relevant, the tractor-trailer that was being operated by Defendant Terry

Carnahan at the time of the subject accident was operated with the authority, consent and knowledge of the tractor-trailer's owner, Defendant Cheeseman.

9. At all times relevant, the tractor-trailer operated by Defendant Terry Carnahan at the time of the subject impact was being operated for Defendant Cheeseman's use and benefit and within the course and scope of the Defendant Terry Carnahan's employment with Defendant Cheeseman.

10. Plaintiff, Chris Kelly, relies on Tenn. Code Ann. § 55-10-311 – prima facie evidence of ownership of automobile and use in owner's business, and Tenn. Code Ann. § 55-10-312 – Registration prima facie evidence of ownership and that operation was for owner's benefit, and avers that the tractor-trailer's owner, Defendant Cheeseman, is vicariously liable for the acts and omissions herein attributed to Defendant Terry Carnahan.

## VENUE

11. All the wrongs complained of herein occurred in Campbell County, Tennessee, within one year preceding the filing of this action. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## JURISDICTION

12. The Plaintiff incorporates each and every allegation contained in all of the above paragraphs of the Complaint as if set forth fully herein.

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because there is complete diversity of citizenship between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00.

14. Based on the facts and allegations herein contained, and under the Tennessee "long arm statutes," Tenn. Code Ann. § 20-2-201, et. seq., consistent with the due process clause of the

3

Fourteenth Amendment to the United States Constitution, this Court has personal jurisdiction over Defendants, Cheeseman and Terry Carnahan.

15. Defendant Cheeseman is an interstate commercial carrier engaged in the business of commercial transportation and it owns, operates and maintains one or more vehicles which operate on the roadways of the State of Tennessee.

16. At all times relevant, Defendant Terry Carnahan was a commercial truck driver operating the tractor-trailer (as defined in more detail herein below) under the Department of Transportation authority of Defendant Cheeseman.

## FACTUAL BACKGROUND

17. Plaintiff would respectfully state and show unto the Court that on July 13, 2021, at or around 6:58 p.m., Plaintiff, Chris Kelly, safely parked his 2012 Peterbilt 389 tractor-trailer at a Pilot truck parking lot located at 304 Howard Baker Highway, Caryville, Tennessee 37714. At all times pertinent hereto, Plaintiff, Chris Kelly's tractor-trailer was parked in a safe, lawful, careful and prudent manner.

18. At or around 6:59 p.m., Plaintiff, Chris Kelly, was standing inside his tractor/truck parked at the Pilot truck parking lot.

19. At the same time, Defendant, Terry Carnahan, was operating an 2017 International TT tractor-trailer in the Pilot truck parking lot and attempting to back/reverse the tractor-trailer into the parking space directly behind the parking space occupied by Plaintiff, Chris Kelly, and the tractor-trailer he had just parked.

20. At or around 6:59 p.m., Defendant, Terry Carnahan, reversed and/or backed the tractor-trailer he was operating into the rear of the tractor-trailer occupied by Plaintiff, Chris Kelly.

21. As a result of the impact, Plaintiff, Chris Kelly, fell inside his truck/tractor causing

him to suffer substantial injuries which have required and will continue to require significant medical care.

22. Following the impact between the two tractor-trailers, Plaintiff, Chris Kelly, exited his tractor/truck and walked around Defendant Cheeseman's tractor-trailer to talk to the Defendant, Terry Carnahan. The Defendant admitted he impacted Plaintiff's tractor-trailer, became agitated and retrieved a handgun/pistol from the sleeper portion of Defendant Cheeseman's tractor/truck. When the Defendant, Terry Carnahan, returned to his driver's seat, he pointed the handgun/pistol at the Plaintiff. More discussion ensued, including the Plaintiff asking the Defendant why he felt the need to pull a handgun/pistol. At that point, with a gun pointed at him, the Plaintiff's adrenaline was pumping. The Plaintiff walked to the back of the Defendant's trailer to take a photo of the tags. The Defendant, Terry Carnahan, then exited his truck, walked up to the Plaintiff, pulled his handgun/pistol and pointed it at the Plaintiff for a second time. The Plaintiff was on the phone with 911 at the time, and Defendant Terry Carnahan acknowledged that he had a gun displayed.

23. The 2017 International TT tractor being operated by Defendant Terry Carnahan at the time of the impact displayed an Indiana license plate bearing license plate number "3008795." The trailer he had in tow displayed an Indiana license plate bearing license plate number "P847364" and displayed the word "Trailer."

24. At all times relevant, Defendant, Terry Carnahan, was an experienced professional driver who had or should have had a commercial driver's license.

25. At all times relevant, Defendant, Terry Carnahan, was operating the tractor-trailer owned by Defendant Cheeseman in connection with business related to interstate commerce and was subject to and required to comply with Federal Motor Carrier Safety Regulations ("FMCSR") and Tennessee state and local laws and regulations.

5

26. Upon information and belief, the tractor-trailer being operated by Defendant, Terry Carnahan, at the time of the subject incident had a gross vehicle weight rating of greater than twenty-six thousand pounds.

27. Upon information and belief, the tractor-trailer being operated by Defendant, Terry Carnahan, at the time of the subject incident met the criteria of a commercial motor vehicle pursuant to 49 CFR § 390.5.

## LIABILITY

### GENERAL NEGLIGENCE

28. The Plaintiff incorporates each and every allegation contained in all of the above paragraphs of the Complaint as if set forth fully herein.

29. Defendant, Terry Carnahan, had a duty to operate his tractor-trailer in a safe and prudent manner.

30. Defendant, Terry Carnahan, breached his duty to operate his tractor-trailer in a safe and prudent manner when he deviated from the applicable standards of care, including, at least, in the following ways:

    a. Recklessly and/or carelessly driving;

    b. Failing to keep a proper lookout;

    c. Failing to exercise due care;

    d. Unsafely parking;

    e. Improperly backing;

    f. Failing to use mirror, cameras, and other technology aboard his tractor-trailer while backing;

    g. Failing to use the G.O.A.L. (Get Out And Look) method for safely backing a commercial motor vehicle;

h. Failing to follow Tennessee Motor Vehicle laws and Federal Motor Carrier Safety Regulations (FMCSR) as noted herein;

i. Failing to adhere to corporate safety and trucking industry standards;

j. Otherwise failing to act reasonably and prudently as a professional; commercial tractor-trailer driver under the circumstances; and

k. Any and all other acts of negligence and/or fault discovered and/or shown at the trial of this matter.

31. Defendant, Terry Carnahan, knew or should have known it was foreseeable for a commercial truck driver like Plaintiff, Chris Kelly, to be standing inside his tractor/truck while parked.

32. Defendant Terry Carnahan knew or should have known it was foreseeable that a commercial truck driver standing in his tractor/truck could fall and suffer injury if his parked tractor-trailer was impacted by another tractor-trailer while backing/parking.

33. Plaintiff, Chris Kelly, would not have fallen inside his tractor/truck but for the negligence of Defendant, Terry Carnahan, when he reversed/backed his tractor-trailer into the rear of Plaintiff, Chris Kelly's, tractor-trailer. Plaintiff Chris Kelly suffered injuries directly and proximately which would not have occurred otherwise but for the negligence of the Defendants Terry Carnahan and his employer, Cheeseman, LLC.

## NEGLIGENCE PER SE

34. The Plaintiff incorporates each and every allegation contained in all of the above paragraphs of the Complaint as if set forth fully herein.

35. Defendant Terry Carnahan's deviations from the applicable standards of care also constitute negligence *per se* for:

a. Violating Tennessee Motor Vehicle laws, including:

7

i. Tenn. Code Ann. § 55-8-136(b) (Drivers to exercise due care):

> **(b)** Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle or person, or any road sign, guard rail or any fixed object either legally using or legally parked or legally placed, upon any roadway, within or beside the roadway right-of-way including, but not limited to, any adjacent sidewalk, bicycle lane, shoulder or berm;

and

ii. Tenn. Code Ann. § 55-10-205(a) (Reckless driving):

> Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving.

b. Violating the FMCSR, including, without limitation:

i. 49 CFR § 392.2 (operation in accordance with laws of jurisdiction of operation):

> Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with

and

ii. 49 CFR § 383.111 (Required knowledge for safe operations including backing):

a) All <u>CMV operators</u> must have knowledge of the following 20 general areas:

8

**(1)** *Safe operations regulations.* Driver-related elements of the regulations contained in parts 391, 392, 393, 395, 396, and 397 of this subchapter, such as:
   **(i)** Motor vehicle inspection, repair, and maintenance requirements;
   **(ii)** Procedures for safe vehicle operations;
   **(iii)** The effects of fatigue, poor vision, hearing impairment, and general health upon safe commercial motor vehicle operation;
   **(iv)** The types of motor vehicles and cargoes subject to the requirements contained in part 397 of this subchapter; and
   **(v)** The effects of alcohol and drug use upon safe commercial motor vehicle operations.

**(2)** *Safe vehicle control systems.* The purpose and function of the controls and instruments commonly found on CMVs.

**(3)** *CMV safety control systems.*
   **(i)** Proper use of the motor vehicle's safety system, including lights, horns, side and rear-view mirrors, proper mirror adjustments, fire extinguishers, symptoms of improper operation revealed through instruments, motor vehicle operation characteristics, and diagnosing malfunctions.
   **(ii)** CMV drivers must have knowledge of the correct procedures needed to use these safety systems in an emergency situation, e.g., skids and loss of brakes.

**(4)** *Basic control.* The proper procedures for performing various basic maneuvers, including:
   **(i)** Starting, warming up, and shutting down the engine;
   **(ii)** Putting the vehicle in motion and stopping;
   **(iii)** Backing in a straight line; and
   **(iv)** Turning the vehicle, e.g., basic rules, off tracking, right/left turns and right curves.

\*\*\*

**(6)** *Backing.* The procedures and rules for various backing maneuvers, including:
   **(i)** Backing principles and rules; and
   **(ii)** Basic backing maneuvers, e.g., straight-line backing, and backing on a curved path.

**(7)** *Visual search.* The importance of proper visual search, and proper visual search methods, including:
   **(i)** Seeing ahead and to the sides;
   **(ii)** Use of mirrors; and

9

(iii) Seeing to the rear.

**(8)** *Communication.* The principles and procedures for proper communications and the hazards of failure to signal properly, including:
    (i) Signaling intent, e.g., signaling when changing direction in traffic;
    (ii) Communicating presence, e.g., using horn or lights to signal presence; and
    (iii) Misuse of communications.

**(9)** *Speed management.* The importance of understanding the effects of speed, including:
    (i) Speed and stopping distance;
    (ii) Speed and surface conditions;
    (iii) Speed and the shape of the road;
    (iv) Speed and visibility; and
    (v) Speed and traffic flow.

**(10)** *Space management.* The procedures and techniques for controlling the space around the vehicle, including:
    (i) The importance of space management;
    (ii) Space cushions, e.g., controlling space ahead/to the rear;
    (iii) Space to the sides; and
    (iv) Space for traffic gaps.

\*\*\*

**(20)** *Fatigue and awareness.* Practices that are important to staying alert and safe while driving, including;
    (i) Being prepared to drive;
    (ii) What to do when driving to avoid fatigue;
    (iii) What to do when sleepy while driving; and
    (iv) What to do when becoming ill while driving.

36. Plaintiff, Chris Kelly, further states and shows unto the Court that Defendant Terry Carnahan's deviations from the aforementioned standards of care and violations of the aforementioned laws/statutes constitute the direct and proximate cause of the negligence and impact described herein for which Defendants are liable and responsible.

37. Defendant, Terry Carnahan, knew or should have known it was foreseeable for a commercial truck driver like Plaintiff, Chris Kelly, to be standing inside his tractor/truck while

10

parked.

38. Defendant Terry Carnahan knew or should have known it was foreseeable that a commercial truck driver standing in his tractor/truck could fall and suffer injury if his parked tractor-trailer was impacted by another tractor-trailer while backing/parking.

39. Plaintiff, Chris Kelly, would not have fallen inside his tractor/truck but for the negligence of Defendant, Terry Carnahan, when he reversed/backed his tractor-trailer into the rear of Plaintiff, Chris Kelly's, tractor-trailer. Plaintiff Chris Kelly suffered injuries caused directly and proximately by Defendants which would not have occurred otherwise but for the negligence of the Defendants Terry Carnahan and his employer Cheeseman, LLC.

## ASSAULT

40. The Plaintiff incorporates each and every allegation contained in all of the above paragraphs of the Complaint as if set forth fully herein.

41. The intentional act of the Defendant Terry Carnahan in exhibiting the handgun/pistol and pointing it at the Plaintiff on two occasions was an intentional attempt to do harm or to frighten the Plaintiff, and the Plaintiff would further show that the Defendant had the then present ability or unmistakable appearance of the then present ability to do harm or to cause the Plaintiff to suffer fright. Upon information and belief, these tortious acts were ratified by the Defendant employer, Cheeseman LLC, in that Defendant Cheeseman approved of or acquiesced in the Defendant Terry Carnahan's carrying a gun in his truck.

42. Plaintiff Chris Kelly suffered injuries caused directly and proximately by the Defendants which would not have occurred otherwise but for the intentional conduct of Defendant Terry Carnahan which, upon information and belief, was ratified by his employer Cheeseman, LLC.

11

## VICARIOUS RESPONSIBILITY, AGENCY, RESPONDEAT SUPERIOR and MASTER-SERVANT

43. The Plaintiff incorporates each and every allegation contained in all of the above paragraphs of the Complaint as if set forth fully herein.

44. The negligence of the Defendant, Terry Carnahan, is imputed to the Defendant, Cheeseman, by operation of law by virtue of the doctrine(s) of agency, apparent agency, employer-employee relations, master-servant, *respondeat superior*, joint venture, contract and/or vicarious liability.

45. At all times relevant, the tractor-trailer that was being operated by Defendant Terry Carnahan at the time of the subject accident was operated with the authority, consent and knowledge of the tractor-trailer's owner, Defendant Cheeseman.

46. Plaintiff, Chris Kelly, would state and show unto the Court that as a result of the impact which was due to the negligence of the Defendants, Plaintiff, Chris Kelly, sustained injuries to his shoulders, neck, back, ankle, and adjacent anatomical structures which required medical treatment. Plaintiff, Chris Kelly, continues to be treated in an effort to effect a cure of his injuries.

## DAMAGES

47. Plaintiff, Chris Kelly, incorporates each and every allegation contained in the foregoing paragraphs of this Complaint, as set forth fully herein. As a direct and proximate result of the acts and/or omissions of the Defendants, Plaintiff, Chris Kelly, sustained injuries which have required, continue to require and in the future will require medical attention. Damages for which Plaintiff, Chris Kelly, seeks compensation include, but are not necessarily limited to:

   a.   Past, present, and future physical pain and suffering;

   b.   Past, present, and future emotional pain and suffering;

c. Past, present, and future medical bills/expenses;

d. Past, present, and future loss of enjoyment of life;

e. Past, present, and future disability and disfigurement;

f. Loss of wages and earning capacity;

g. Pre-judgment and/or post-judgment interest to the extent permitted by law; and

h. Any and all other general and/or special damages recoverable under the applicable law(s) proven at trial and/or developed in discovery.

48. WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Chris Kelly, sues for injuries, damages, and losses described herein and prays for judgment and an award of compensatory damages against the Defendants in such amount as may appear fair and reasonable to a jury but not to exceed SEVEN MILLION DOLLARS ($7,000,000.00), and for all such other relief, both general and specific, to which he may be entitled under the premises.

49. A JURY IS RESPECTFULLY DEMANDED.

Respectfully submitted,

DOMENGEAUX WRIGHT ROY & EDWARDS, LLC

BY: _____
Andrew J. Quackenbos (LA Bar Roll No. 31924)
John Parkerson Roy (LA Bar Roll No. 32048)
Remy A.M. Jardell (LA Bar Roll No. 30566)
556 Jefferson Street, Suite 500
Lafayette, LA 70502
(337) 233-3033 – Phone
(337) 232-8213 – Facsimile
andrewq@wrightroy.com
johnr@wrightroy.com
remyj@wrightroy.com
*Pro Hac Vice pending*

GARY K. SMITH LAW, PLLC

BY: _____
GARY K. SMITH (TN Bar No. 8124)
KAREN M. CAMPBELL (TN Bar No. 17467)
1770 Kirby Parkway Suite 427
Memphis, Tennessee 38138
(901) 308-6484 – Phone
(901) 308-6482 – Facsimile
gsmith@garyksmithlaw.com
kcampbell@garyksmithlaw.com
*Pro Hac Vice pending*
*Attorneys for Plaintiff*